**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 7 |
| RACHEL VILLANUEVA, : | |
| Debtor. : | CASE NO. 22-50596-PMB |
| | |
| TZE JEN YEOH AND KAORU : | |
| MORIMOTO, : | |
| Movants : | |
| : | CONTESTED MATTER |
| v. : | |
| : | |
| RACHEL VILLANUEVA, : | |
| : | |
| Respondent : | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that on February 9, 2022, **TZE JEN YEOH AND KAORU MORIMOTO** filed **MOTION FOR RELIEF FROM STAY** ("Motion").

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the on the Motion at the following number **833-568-8864**; meeting ID **161 706 9079** at **1:00 PM** on the **28th** day of **February 2022** in **Courtroom 1202**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the court in connection with this initial telephonic hearing. Please review the "hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive S.W., Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion for relief from the Automatic Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

February 9, 2022.                                    /s/ Ian M. Falcone
                                                     Ian M. Falcone
                                                     GA Bar 254470
                                                     Attorney for Movants

THE FALCONE LAW FIRM, P.C.
363 Lawrence Street
Marietta, GA 30060
(770) 426-9359
imf@falconefirm.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 7 |
| RACHEL VILLANUEVA, | : |
| Debtor. | : CASE NO. 22-50596-PMB |
| | : |
| TZE JEN YEOH AND KAORU MORIMOTO, | : |
| Movants | : |
| | : CONTESTED MATTER |
| v. | : |
| | : |
| RACHEL VILLANUEVA, | : |
| Respondent | : |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COME NOW the Movants, TZE JEN YEOH AND KAORU MORIMOTO, by and through their attorney, and show the Court as follows:

1. This is a Motion under Section 362 (d) of the Bankruptcy Code for relief from the existing automatic stay for the purpose of retaining all rights Movants have by virtue of ownership of real property located at 2209 Wells Drive, Smyrna, Georgia 30080.

2. On or about December 1, 2021, Movants show that Rachel Villanueva (hereinafter "Respondent") was served an eviction notice and termination of rental agreement to vacate the rental property by December 31, 2021 for failure to pay rent (See attached Exhibit A).

3. The lease expires on March 30, 2022 (See attached Exhibit B).

4. On or about January 3, 2022, Movants commenced a dispossessory action in the Magistrate Court of Cobb County (Civil Action number 22-E-00044).

5. Respondent, RACHEL VILLANUEVA, filed the present proceeding under Chapter 7 of the Bankruptcy Code on January 22, 2022, and remains in possession of the subject property.

6. Respondent has failed to make any rental payment that have come due since the date Respondent RACHEL VILLANUEVA filed her Chapter 7 petition.

7. Respondent continues to occupy the premises despite her failure to pay post-petition rent.

8. Relief from the automatic stay is provided pursuant to 11 U.S.C. 362(d)(2) where the Movants are able to show cause justifying said relief, including the lack of adequate protection of an interest in real property.

9. In the present case, Respondent continues to occupy the premises on a month to month basis without keeping current on the rental obligation resulting in a substantial financial loss to Movants.

10. Movants' interest in the subject premises is not adequately protected and Movants are being forced to provide use of the premises without proper compensation.

11. Movants are being harmed by Respondent's continued occupancy of the property without payment of rent and cannot reasonably expect to recuperate its losses at any time.

WHEREFORE, Movants pray that the automatic stay be lifted thereby allowing Movants to regain possession of its premises through the dispossessory process and any other process allowed by law.

February 9, 2022

Respectfully submitted,

/s/ Ian M. Falcone
Ian M. Falcone
Attorney for Movants
GA BAR NO. 254470

THE FALCONE LAW FIRM, P.C.
363 Lawrence Street
Marietta, GA 30060
(770) 426-9359
imf@falconefirm.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 7 |
| RACHEL VILLANUEVA, | : |
| Debtor. | : CASE NO. 22-50596-PMB |
| | |
| TZE JEN YEOH AND KAORU MORIMOTO, | : |
| Movant | : |
| | : CONTESTED MATTER |
| v. | : |
| | : |
| RACHEL VILLANUEVA, | : |
| Respondent | : |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the within and foregoing "**MOTION FOR RELIEF FROM STAY**" on those listed below and on the attached sheets by depositing a true and complete copy of the same in the United States Mail, with adequate postage thereon:

Rachel Villanueva
2209 Wells Dr SE
Smyrna, GA 30080

S. Gregory Hays, Trustee
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Rd
Atlanta, GA 30305

Karen King
King & King Law LLC
215 Pryor Street, SW
Atlanta, GA 30303

Tze Jen Yeoh & Kaoru Morimoto
2435 Cajun Dr
Marietta, GA 30066

This 9th day of February 2022

THE FALCONE LAW FIRM, PC
363 Lawrence Street
Marietta, GA 30060
(770) 426-9359
imf@falconefirm.com

/s/ IAN M. FALCONE
Ian M. Falcone
GA Bar No: 254470
Attorney for Movants

# Notice of Eviction For Non-Compliance

TO: **Ms. Rachel Villanueva**

(Tenant's Name)

**2209 Wells Drive**

(Rental Unit Street Address)

**Smyrna Georgia 30080**

(Rental Unit City/State/Zip)

You (Tenant) have failed to comply with/violated the following provisions of the lease/rental agreement signed on March 30, 2021:

- **Provision 1. Terms:** The tenant failed to pay a full amount of rent for 2021 February (short $50), April (short $100), May (short $250), June (short $25), August (short $250) thus far.
  Tenant has been late every single month of 2021, with late fees accumulating to $900, and a **total balance of $1575** that is owe as back rent currently **as of Dec 1, 2021** ($900 late fees + $675 back rent)

As stated above, the tenant failed to comply the lease/rental agreement signed on March 30, 2021 and has breached the agreement.

If rent isn't received in full by Dec. 5 @11pm, as agreed upon, you are hereby being evicted and please **move out of the rental property** by December 31, 2021 **at 9pm**, your tenancy will be terminated and lawsuit will be filed to evict you.

Signature of party completing this notice:                    Date : 12/1/2021

Printed Name and Title (i.e., Landlord, Property Manager, etc.):

*Tze Jen Yeoh, David (Landlord)*



EXHIBIT A

MARCH 2021

## RESIDENTIAL LEASE AGREEMENT – 2209 WELLS DR. SMYRNA, GA 30080

This Rental Agreement or Residential Lease shall evidence the complete terms and conditions under which the parties whose signatures appear below have agreed.

Landlord/Lessor/Agent, _TEE JEN YEOH / KAORI MORIMOTO_, shall be referred to as "OWNER" and Tenant(s)/Lessee, _RACHEL VILLANUEVA_, shall be referred to as "RESIDENT."

As consideration for this agreement, OWNER agrees to rent/lease to RESIDENT and RESIDENT agrees to rent/lease from OWNER for use solely as a private residence, the premises located at _2209 WELLS DR_ in the city of _SMYRNA, GA 30080_.

1. **TERMS:** RESIDENT agrees to pay in advance $ _1350_ per month on the _1st_ day of each month. This agreement shall commence on _30th MARCH 2021_ and continue; (check one)

A. ✓ until _30th MARCH_, _2022_ as a leasehold. Thereafter it shall become a month-to-month tenancy. If RESIDENT should move from the premises prior to the expiration of this time period, he shall be liable for all rent due until such time that the Residence is occupied by an OWNER approved paying RESIDENT and/or expiration of said time period, whichever is shorter.

B. __ until _____, _____ on a month-to-month tenancy until either party shall terminate this agreement by giving a written notice of intention to terminate at least 30 days prior to the date of termination.

2. **PAYMENTS:** Rent and/or other charges are to be paid at such place or method designated by the owner as follows _DAVID YEOH @ 2435 CAJUN DR. MARIETTA GA 30066_. All payments are to be made by check, cash, Paypal, direct deposit, ACH or Credit Card(include additional 4%) shall be acceptable.

OWNER acknowledges receipt of the First Month's rent of $ _1000 (pro rated)_, and a Security Deposit of $ _600_, and additional charges/fees for _(has been administered_ _Last month $1350_, for a total payment of $ _3150_. All _3/5/2020)_ payments are to be made payable to _DAVID YEOH_.

**EXHIBIT B**

3. **SECURITY DEPOSITS:** The total of the above deposits shall secure compliance with the terms and conditions of this agreement and shall be refunded to RESIDENT within __30__ days after the premises have been completely vacated less any amount necessary to pay OWNER; a) any unpaid rent, b) cleaning costs, c) key replacement costs, d) cost for repair of damages to premises and/or common areas above ordinary wear and tear, and e) any other amount legally allowable under the terms of this agreement. A written accounting of said charges shall be presented to RESIDENT within __30__ days of move-out. If deposits do not cover such costs and damages, the RESIDENT shall immediately pay said additional costs for damages to OWNER.

4. **LATE CHARGE:** A late fee of $__100__, (not to exceed __10__% of the monthly rent), shall be added and due for any payment of rent made after the __5TH__ of the month. Any dishonored check shall be treated as unpaid rent, and subject to an additional fee of $__25__.

5. **UTILITIES:** RESIDENT agrees to pay all utilities and/or services based upon occupancy of the premises except __n/a__.

6. **OCCUPANTS:** Guest(s) staying over 15 days without the written consent of OWNER shall be considered a breach of this agreement. ONLY the following individuals and/or animals, AND NO OTHERS shall occupy the subject residence for more than 15 days unless the expressed written consent of OWNER obtained in advance

_____

7. **PETS:** No animal, fowl, fish, reptile, and/or pet of any kind shall be kept on or about the premises, for any amount of time, without obtaining the prior written consent and meeting the requirements of the OWNER. Such consent if granted, shall be revocable at OWNER'S option upon giving a 30 day written notice. In the event laws are passed or permission is granted to have a pet and/or animal of any kind, an additional deposit in the amount of $__n/a__ shall be required along with additional monthly rent of $__n/a__ along with the signing of OWNER'S Pet Agreement. RESIDENT also agrees to carry insurance deemed appropriate by OWNER to cover possible liability and damages that may be caused by such animals.

8. **NO LIQUID FILLED FURNISHINGS**

9. **PARKING:** When and if RESIDENT is assigned a parking area/space on OWNER'S property, the parking area/space shall be used exclusively for parking of passenger automobiles and/or those approved vehicles by the owner. RESIDENT is hereby assigned or permitted to park only in the following driveway area, available garage or space _____. Said space shall not be used for any commercial enterprises, painting, or repair of vehicles. No other parking space shall be used by RESIDENT or RESIDENT'S guest(s). RESIDENT is responsible for oil leaks and other vehicle discharges for which RESIDENT shall be charged for cleaning if deemed necessary by OWNER. No parking on the grass.

10. **NOISE:** RESIDENT agrees not to cause or allow any noise or activity on the premises which might disturb the peace and quiet of another RESIDENT and/or neighbor. Said noise and/or activity shall be a breach of this agreement.

11. **DESTRUCTION OF PREMISES:** If the premises become totally or partially destroyed during the term of this Agreement so that RESIDENT'S use is seriously impaired, OWNER or RESIDENT may terminate this Agreement immediately upon three day written notice to the other.

12. **CONDITION OF PREMISES:** RESIDENT acknowledges that he has examined the premises and that said premises, all furnishings, fixtures, furniture, plumbing, heating, electrical facilities, all items listed on the attached property condition checklist, if any, and/or all other items provided by OWNER are all clean, and in good satisfactory condition except as may be indicated elsewhere in this Agreement. RESIDENT agrees to keep the premises and all items in good order and good condition and to immediately pay for costs to repair and/or replace any portion of the above damaged by RESIDENT, his guests and/or invitees, except as provided by law. At the termination of this Agreement, all of above items in this provision shall be returned to OWNER in clean and good condition except for reasonable wear and tear and the premises shall be free of all personal property and trash not belonging to OWNER. It is agreed that all dirt, holes, tears, burns, and stains of any size or amount in the carpets, drapes, walls, fixtures, and/or any other part of the premises, do not constitute reasonable wear and tear.

13. **ALTERATIONS:** RESIDENT shall not paint, wallpaper, alter or redecorate, change or install locks, install antenna or other equipment, screws, fastening devices, large nails, or adhesive materials, place signs, displays, or other exhibits, on or in any portion of the premises without the written consent of the OWNER except as may be provided by law.

14: **PROPERTY MAINTENANCE:** RESIDENT shall deposit all garbage and waste in a clean and sanitary manner into the proper receptacles/bins and shall cooperate in keeping area neat and clean. RESIDENT shall be responsible for all garbage and its removal. RESIDENT shall be responsible for keeping the kitchen and bathroom drains free of things that may tend to cause clogging of the drains. RESIDENT shall pay for the cleaning out of any plumbing fixture that may need to be cleared of stoppage and for the expense or damage caused by stopping of waste pipes or overflow from bathtubs, wash basins, or sinks.

**Lawn and Exterior Maintenance:** Tenant shall keep the lawn mowed and edged, beds free of weeds, shrubs trimmed, trash and grass clippings picked up on a regular basis (minimum of once every two weeks in growing season and fall leaf season) and shall keep Property, including yard, lot, grounds, Premises, walkways and driveway clean and free of rubbish, trash and debris.

**Pest Control:** Landlord will not be responsible for termite and rodent control, or other pest control (including ants, cockroaches, spiders and other insects) and shall be the responsibility of Tenant.

**Smoke Detector:** Tenant agrees to be solely responsible to check the smoke detector every thirty (30) days and notify Landlord immediately if the smoke detector is not functioning properly.

**Freezing of Pipes:** To help in preventing the freezing of pipes, Tenant agrees that when the temperature outside falls below 32°F,

Tenant shall: (a) leave the thermostat regulating the heat serving Premises in an "on" position and set to a minimum of 60°F; and insulate faucets to prevent from freezing if necessary.

**Mold and Mildew:** Tenant acknowledges that mold and/or mildew can grow in any portion of the Premises that are exposed to elevated levels of moisture and that some forms of mold and mildew can be harmful to their health. Tenant therefore agrees to

regularly inspect the Premises for mold and/or mildew and immediately report to Landlord any water intrusion problems mold and/or mildew (other than in sinks, showers, toilets and other areas designed to hold water or to be wet areas). Tenant shall not block or cover any heating, ventilation, or air conditioning ducts located in the Premises.

**Tenant's Responsibilities.**

**Repairs and Maintenance:** Tenant acknowledges that Tenant has inspected Premises and that it is fit for residential occupancy. Tenant shall promptly notify Landlord of any dangerous condition or need for maintenance existing in Premises or on Property. Upon receipt of notice from Tenant, Landlord shall, within a reasonable time period thereafter, repair the following: (1) all defects in Premises or Property which create unsafe living conditions or render Premises untenable; and (2) to the extent required by state law, such other defects which, if not corrected, will leave Premises or Property in a state of disrepair. Except as provided above, Tenant agrees to maintain Premises in the neat, sanitary and clean condition free of trash and debris. Any expenses incurred by Landlord to remedy any violations of this provision shall be reimbursed to Landlord by Tenant within thirty (30) days of the receipt of an invoice from Landlord. If Tenant fails to timely pay said invoice Tenant shall be in default of this Agreement.

15. **HOUSE RULES:** RESIDENT shall comply with all house rules and deemed part of this rental agreement, and a violation of any of the house rules is considered a breach of this agreement.

A. *2 small dogs permitted, no other pets*

B.

C.

D.

E.

16. **CHANGE OF TERMS:** The terms and conditions of this agreement are subject to future change by OWNER after the expiration of the agreed lease period upon 30-day written notice setting forth such change and delivered to RESIDENT. Any changes are subject to laws in existence at the time of the Notice of Change Of Terms.

17. **TERMINATION:**

**Early Termination by Tenant.**

**Right to Terminate Early:** Provided Tenant is not in default hereunder at the time of giving notice, Tenant has strictly complied with all of the provisions of this paragraph, and termination is as of the last day of a calendar month, Tenant may terminate this Lease before the expiration of the term of the Lease by:

- A. Giving Landlord no less than 30 days notice on or before the day rent is due; plus paying all monies due through date of termination, plus approval of owner that no damages have been incurred or repairs have been satisfied; **plus forfeiting the total amount of all deposits**; renter is responsible for any return premises in a clean and ready-to-rent condition
- B. Any notice for early termination must be signed by all Tenants. Tenant's election of early termination shall not relieve Tenant of responsibilities and obligations regarding damage to Premises or Property. Tenant may not apply the security deposit toward the payment of any of Tenant's financial obligations set forth in this Early Termination by Tenant Paragraph.

**Early Termination by Landlord.** Tenant agrees that Landlord may terminate the lease prior to the lease expiration date and Tenant agrees to vacate the property if the following conditions are met:

**Landlord gives Tenant thirty (30) days written notice to vacate (Tenant still owes rent through the thirty (30) day notice period).**

**RenewalTerm.**

After expiration of the leasing period, this agreement is automatically renewed from month to month, but may be terminated by either party giving to the other a 30-day written notice of intention to terminate. Where laws require "just cause", such just cause shall be so stated on said notice. The premises shall be considered vacated only after all areas including storage areas are clear of all RESIDENT'S belongings, and keys and other property furnished for RESIDENT'S use are returned to OWNER. Should the RESIDENT hold over beyond the termination date or fail to vacate all possessions on or before the termination date, RESIDENT shall be liable for additional rent and damages which may include damages due to OWNER'S loss of prospective new renters.

18. **POSSESSION:** If OWNER is unable to deliver possession of the residence to RESIDENTS on the agreed date, because of the loss or destruction of the residence or

because of the failure of the prior residents to vacate or for any other reason, the RESIDENT and/or OWNER may immediately cancel and terminate this agreement upon written notice to the other party at their last known address, whereupon neither party shall have liability to the other, and any sums paid under this Agreement shall be refunded in full. If neither party cancels, this Agreement shall be prorated and begin on the date of actual possession.

**19. INSURANCE:** RESIDENT acknowledges that OWNERS insurance does not cover personal property damage caused by fire, theft, rain, war, acts of God, acts of others, and/or any other causes, nor shall OWNER be held liable for such losses. RESIDENT is hereby advised to obtain his own insurance policy to cover any personal losses.

**20. RIGHT OF ENTRY AND INSPECTION:** OWNER may enter, inspect, and/or repair the premises at any time in case of emergency or suspected abandonment. OWNER shall give courtesy advance notice and may enter for the purpose of showing the premises during normal business hours to prospective renters, buyers, lenders, for smoke alarm inspections, and/or for normal inspections and repairs. OWNER is permitted to make all alterations, repairs and maintenance that in OWNER'S judgment is necessary to perform.

**21. ASSIGNMENT:** RESIDENT agrees not to transfer, assign or sublet the premises or any part thereof.

**22. PARTIAL INVALIDITY:** Nothing contained in this Agreement shall be construed as waiving any of the OWNER'S or RESIDENT'S rights under the law. If any part of this Agreement shall be in conflict with the law, that part shall be void to the extent that it is in conflict, but shall not invalidate this Agreement nor shall it affect the validity or enforceability of any other provision of this Agreement.

**22. NO WAIVER:** OWNER'S acceptance of rent with knowledge of any default by RESIDENT or waiver by OWNER of any breach of any term of this Agreement shall not constitute a waiver of subsequent breaches. Failure to require compliance or to exercise any right shall not be constituted as a waiver by OWNER of said term, condition, and/or right, and shall not affect the validity or enforceability of any provision of this Agreement.

**23. ATTORNEY FEES:** If any legal action or proceedings be brought by either party of this Agreement, the prevailing party shall be reimbursed for all reasonable attorney's fees and costs in addition to other damages awarded.

24. **JOINTLY AND SEVERALLY:** The undersigned RESIDENTS are jointly and severally responsible and liable for all obligations under this agreement.

25. **REPORT TO CREDIT/TENANT AGENCIES:** You are hereby notified that a nonpayment, late payment or breach of any of the terms of this rental agreement may be submitted/reported to a credit and/or tenant reporting agency, and may create a negative credit record on your credit report.

26. **LEAD NOTIFICATION REQUIREMENT:** For rental dwellings built before 1978, RESIDENT acknowledges receipt of the following: (Please check) ✓ Lead Based Paint Disclosure Form ✓ EPA Pamphlet

27. **ADDITIONS AND/OR EXCEPTIONS**
_____
_____

28. **NOTICES:** All notices to RESIDENT shall be served at RESIDENT'S premises and all notices to OWNER shall be served at _____

29. **INVENTORY:** The premises contains the following items, that the RESIDENT may use. _____

30. **KEYS AND ADDDENDUMS:** RESIDENT acknowledges receipt of the following which shall be deemed part of this Agreement: (Please check) 2 Keys #of keys and purposes _____ House Rules ✓ Pet Agreement ✓ Other _____

31. **ENTIRE AGREEMENT:** This Agreement constitutes the entire Agreement between OWNER and RESIDENT. No oral agreements have been entered into, and all modifications or notices shall be in writing to be valid.

**32. RECEIPT OF AGREEMENT:** The undersigned RESIDENTS have read and understand this Agreement and hereby acknowledge receipt of a copy of this Rental Agreement.

RESIDENT'S Signature

_[signature]_

Date 3·30·21    RESIDENT'S Signature

_Rachel Villanueva_

Date _____

_____ TAXPIN/ID#

OWNER'S or Agent's Signature _[signature]_ - TZE JEN YEOH (DAVID)

Date 30th MARCH 2021